AO 91 (Rev. 11/11) Criminal Complaint | AUSA Luke Fiedler (312) 886-0973

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA

v.

AMIR A. FAGAN, DEMOND EDWARDS, and
CHASHONN TONEY

CASE NUMBER: 26 CR 291

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief. On or about June 9, 2026, at Country Club Hills, in the Northern District of Illinois, Eastern Division, and elsewhere, defendants AMIR A. FAGAN and DEMOND EDWARDS violated:

Count One

| Code Section | Offense Description |
|---|---|
| Title 18, United States Code, Sections 2114(a) and 2 | attempted robbery of a person having lawful charge, control, and custody of any money or other property of the United States, and, in effecting such attempted robbery, put that person's life in jeopardy by the use of a dangerous weapon, namely, a firearm |

Count Two

On or about June 9, 2026, at Country Club Hills, in the Northern District of Illinois, Eastern Division, and elsewhere, defendants CHASHONN TONEY violated:

| Code Section | Offense Description |
|---|---|
| Title 18, United States Code, Section 111(a) | forcibly assaulted, resisted, opposed, impeded, intimidated, and interfered with a person designated in Title 18, United States Code, Section 1114, namely an officer and employee of the United States, while he was engaged in the performance of his official duties, and in the commission of such acts used a deadly and dangerous weapon |

This criminal complaint is based upon these facts:

 X  Continued on the attached sheet.

*Scott Erthal*

SCOTT ERTHAL

Special Agent, Federal Bureau of Investigation (FBI)

Pursuant to Fed. R. Crim. P. 4.1, this Complaint is presented by reliable electronic means. The above-named agent provided a sworn statement attesting to the truth of the Complaint and Affidavit by telephone.

Date: June 11, 2026

_____
*Judge's signature*

City and state: Chicago, Illinois

KERI L. HOLLEB HOTALING, U.S. Magistrate Judge

*Printed name and title*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

## **AFFIDAVIT**

I, Scott Erthal, being duly sworn, state as follows:

1.      I am a Special Agent with the Federal Bureau of Investigation ("FBI") and have been employed in such capacity since approximately January 2019. I am currently assigned to the FBI's South Resident Agency, and my responsibilities include the investigation of bank robberies, narcotics trafficking offenses, gang and weapons offenses, the apprehension of violent fugitives, and other violent crimes.

2.      This affidavit is submitted in support of:

a.      a criminal complaint alleging that AMIR A. FAGAN and DEMOND EDWARDS have violated Title 18, United States Code, Section 2114(a), by attempting to rob an individual who had lawful charge, control, or custody of money or other property of the United States; and

b.      a criminal complaint alleging that CHASHONN TONEY has violated Title 18, United States Code, Section 111(a), by forcibly assaulting, resisting, opposing, impeding, intimidating, or interfering with a person designated in Title 18, United States Code, Section 1114, namely an officer and employee of the United States, while he was engaged in the performance of his official duties, and in the commission of such acts used a deadly and dangerous weapon.

3.      Because this affidavit is being submitted for the limited purpose of establishing probable cause in support of a criminal complaint charging AMIR A.

FAGAN and DEMOND EDWARDS with attempted robbery of a person having lawful charge, control, and custody of any money or other property of the United States, and, in effecting such attempted robbery, put that person's life in jeopardy by the use of a dangerous weapon, namely, a firearm, and in support of a criminal complaint charging CHASHONN TONEY with forcibly assaulting, resisting, opposing, impeding, intimidating, or interfering with a person designated in Title 18, United States Code, Section 1114, namely an officer and employee of the United States, while he was engaged in the performance of his official duties, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to believe that the defendants committed the offense alleged in the complaint.

4.      The statements in this affidavit are based on my personal knowledge derived from my own investigation, observations, and actions; my training and experience; my review of surveillance photographs, video footage, and other evidence; information provided to me by other law enforcement personnel including from the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") and FBI Special Agents, as well as by persons with knowledge of the offense; and the training and experience of other law enforcement officers with whom I have spoken.

## I.      FACTS SUPPORTING PROBABLE CAUSE

5.      In summary, as further described below, on June 9, 2026, at approximately 5:30 p.m., approximately five males and one female attempted to rob two ATF undercover officers ("UC-1" and "UC-2") and a confidential informant ("CI-

2")[1] during a controlled firearms purchase at or near a residence on the 18800 block of Loretto Lane in Country Club Hills, Illinois. FAGAN and EDWARDS were subsequently identified as two of those individuals, as further described in Paragraphs 15 and 17, respectively. Following the incident, TONEY attempted to flee in the vehicle in which FAGAN and EDWARDS had been travelling and rammed it into an undercover ATF vehicle.

6. According to ATF agents with knowledge of the investigation, the ATF has been conducting an investigation of firearms trafficking by Individual A in the Chicago area. According to ATF, undercover law enforcement officers conducted approximately two controlled purchases of firearms from Individual A on June 3 and June 5, 2026. According to ATF, after those transactions occurred, CI-2 exchanged additional recorded communications with Individual A between approximately June 6, 2026, and June 9, 2026, with the goal of conducting an additional controlled purchase of firearms to take place on June 9, 2026.

7. According to ATF agents with knowledge of the investigation, as part of the contemplated June 9, 2026 purchase, UC-1, UC-2, and CI-2 planned to meet with Individual A for the purpose of purchasing eight total firearms, for a total purchase price of $8,700 USD in cash.

---

[1] According to ATF agents with knowledge of the investigation, CI-2 has cooperated with ATF since approximately October 2017, though he / she was deactivated for a portion of that time due to an arrest. CI-2 has been paid approximately $150,350 for his / her cooperation. CI-2 has prior felony convictions and/or was arrested for firearm and narcotic related charges.

8. According to ATF agents with knowledge of the investigation, on June 9, 2026, ATF agents met with CI-2 at or near a predetermined staging location in Midlothian, Illinois.

9. According to ATF agents with knowledge of the investigation, UC-1, UC-2 and CI-2 left the predetermined staging location in an undercover vehicle ("UCV"). The UCV was equipped with audio and video recording equipment. The UCV traveled to Restaurant A on the 13400 block of South Cicero Avenue in Crestwood, Illinois, and picked up Individual A at Restaurant A. Individual A entered the UCV. ATF agents conducted mobile surveillance of the UCV.

10. According to ATF agents with knowledge of the investigation, Individual A directed UC-1, UC-2, and CI-2 to drive to a residence on the 18800 block of Loretto Lane in Country Club Hills, Illinois, to meet another individual who was purportedly in possession of the firearms to be purchased. UC-1, UC-2, CI-2, and Individual A arrived at that location in the UCV at approximately 4:48 p.m.

11. According to ATF agents with knowledge of the investigation, at approximately 5:24 p.m., a white Dodge Dart bearing Illinois license plate GB71878 arrived at the residence and parked in the street in front of the driveway entrance behind the UCV. According to law enforcement officers conducting surveillance and based on video from the UCV, Individual A exited the UCV shortly before the Dodge Dart arrived and began making phone calls that were not audible to UC-1 or UC-2. According to ATF agents with knowledge of the investigation and video of the incident, CI-2 exited the UCV shortly after the Dodge Dart stopped behind the UCV.

12. According to ATF agents with knowledge of the investigation and video of the incident, UC-1 and UC-2 observed that the Dodge Dart contained approximately six individuals. All but two of the subjects appeared to be wearing balaclava-style face masks. Individual A and CI-2 approached the Dodge Dart and looked inside to determine whether it contained the firearms to be purchased. Individual A and CI-2 then returned to the UCV.

13. According to video of the incident, two individuals—subsequently identified as FAGAN and EDWARDS, as described in Paragraphs 15 and 17, respectively—then exited the Dodge Dart and approached the UCV. FAGAN wore a black t-shirt with a colored graphic on it and dark colored pants. EDWARDS wore a black, balaclava-style face mask, grey gloves, wearing all black including a black leather backpack observed with what appeared to be an AR pistol with what appeared to be the buffer tube of the firearms sticking out of EDWARDS's backpack. According to ATF agents with knowledge of the investigation and video of the incident, UC-1 and UC-2 exit the UCV after FAGAN and EDWARDS approach the UCV.

14. According to ATF agents with knowledge of the investigation and video of the incident, Individual B exited the front passenger seat of the Dodge Dart and pointed a weapon towards UC-1, UC-2, CS-2, and Individual A. At the same moment, TONEY opened the front driver's side door of the Dodge Dart. TONEY wore a light-colored hooded sweatshirt and gloves. FAGAN turned around, removed a firearm from his inner jacket, and EDWARDS drew a handgun from the black backpack. FAGAN, EDWARDS, and Individual B then pointed their firearms at UC-1, UC-2,

and CI-2. UC-1 told FAGAN, EDWARDS, and Individual B to put their firearms down and drew their own firearms out in an attempt to protect themselves.

15. According to ATF agents with knowledge of the investigation, during this confrontation, the ATF's REACT Team pulled up to the residence with their police lights and sirens activated. The REACT Team was driving a silver Dodge Ram and a GMC Terrain-type SUV. The REACT Team fired shots towards both FAGAN and EDWARDS while both FAGAN and EDWARDS had their firearms out and pointed at UC-1 and UC-2. FAGAN was struck one time in the head and one time in the arm. FAGAN was subsequently brought to a hospital for treatment. According to law enforcement officers at the scene, FAGAN identified himself as Amir Fagan at the hospital. Law enforcement officers subsequently obtained a driver's license photograph of FAGAN and identified him based on a comparison with that photograph.

16. According to video of the incident, TONEY attempted to flee in the Dodge Dart, driving the Dodge Dart at a high rate of speed towards ATF vehicles that had lights and sirens activated. According to ATF agents on scene, the Dodge Dart impacted an ATF undercover vehicle that was occupied by ATF agents. TONEY then fled the area on foot.

17. After shots were fired, law enforcement officers observed a person who appeared to be EDWARDS run from the scene. Law enforcement officers pursued EDWARDS on foot, but briefly lost visual contact. A law enforcement officer located EDWARDS running at or near the 18900 block of Martin Court, approximately two

blocks south of the location of the transaction. The law enforcement officer pursuing EDWARDS announced his police presence and told EDWARDS to stop. EDWARDS told the law enforcement officer words to the effect of "I'm not going back to jail," and a physical altercation ensued between EDWARDS and the law enforcement officer. According to the law enforcement officer pursuing EDWARDS, EDWARDS struck the law enforcement officer multiple times about his face and body with his fists. In response, the law enforcement officer shot EDWARDS with his department-issued firearm. EDWARDS was then taken to a hospital for treatment. According to a law enforcement officer who was present at the hospital with EDWARDS, a nurse identified EDWARDS as Demond Edwards. Law enforcement obtained a prior booking photograph of EDWARDS and identified him based on a comparison based on that image.

18. Following the pursuit of EDWARDS, law enforcement officers located a Glock firearm on the rooftop on a nearby home in the area of where EDWARDS was shot.

19. Later on June 9, 2026, law enforcement officers located TONEY hiding in the area based on a tip from a local resident. As law enforcement officers canvassed the area for additional evidence, a law enforcement officer was approached by a local resident. The resident advised that he/she observed a hooded sweatshirt near their garage that did not belong to him/her. Law enforcement officers conducted a protective sweep of the garage and located TONEY hiding in the garage and took him into custody. Following his arrest, law enforcement officers provided TONEY with

*Miranda* warnings. TONEY agreed to waive his right to remain silent. In summary and in part, TONEY admitted that earlier in the day he had been in the Dodge Dart with multiple other individuals who were wearing black clothing and facemasks as well as one female individual. TONEY further admitted that he had been the driver of the white Dodge Dart that hit another vehicle prior to his arrest.

## II.    CONCLUSION

20.    Based on the foregoing facts, I respectfully submit that there is probable cause to believe that AMIR A. FAGAN DEMOND EDWARDS attempted to rob a person having lawful charge, control, and custody of any money or other property of the United States, and, in effecting such attempted robbery, put that person's life in jeopardy by the use of a dangerous weapon, namely, a firearm and on or about June 9, 2026, in violation of Title 18, United States Code, Sections 2114(a), and 2; and that there is probable cause to believe that CHASHONN TONEY forcibly assaulted, resisted, opposed, impeded, intimidated, or interfered with a person designated in Title 18, United States Code, Section 1114, namely an officer and employee of the United States, while he was engaged in the performance of his official duties, and in the commission of such acts used a deadly and dangerous weapon.

FURTHER AFFIANT SAYETH NOT.

_Scott Erthal_

Scott Erthal
Special Agent, Federal Bureau of
Investigation

SWORN TO AND AFFIRMED by telephone June 11, 2026.

Honorable KERI L. HOLLEB HOTALING
United States Magistrate Judge